UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA


United States of America,      )
                               )
              Plaintiff,       )
                               )
        vs.                    )      File No. 1:18-cr-38
                               )
Jorge Mikel Pitts,             )      <u>COURT REDACTED</u>
                               )
              Defendant.       )


<u>TRANSCRIPT OF SENTENCING</u>


Taken at
United States Courthouse
Bismarck, North Dakota
January 13, 2021


BEFORE THE HONORABLE DANIEL L. HOVLAND
-- UNITED STATES DISTRICT COURT JUDGE --

APPEARANCES

    MR. RICK LEE VOLK
    U.S. Attorney's Office
    220 E. Rosser Ave
    P. O. Box 699
    Bismarck, North Dakota 58502-0699

                       FOR THE UNITED STATES

- - - - - - - - - -

    MR. KERRY S. ROSENQUIST
    Rosenquist & Arnason, PLLP
    301 North Third Street, Suite 300
    Grand Forks, North Dakota 58203

                       FOR THE DEFENDANT

- - - - - - - - - -

Probation Officer:  Heather Achtenberg-Heck

- - - - - - - - - -

Certificate of Court Reporter - Page 38

- - - - - - - - - -

2

1          (The above-entitled matter came before the Court, The

2     Honorable Daniel L. Hovland, United States District Court

3     Judge, presiding, commencing at 10:00 a.m., Wednesday,

4     January 13, 2021, in the United States Courthouse, Bismarck,

5     North Dakota.  The following proceedings were had and made of

6     record in open court with the defendant present.)

7                    - - - - - - - - - - -

8          THE COURT:  We will open the record in the case of

9     United States of America versus Jorge Pitts.  Here on behalf of

10:00    10     the federal government is AUSA Rick Volk.  Representing the

11     defendant here is Attorney Kerry Rosenquist.  And, Mr. Pitts,

12     how are you?

13          THE DEFENDANT:  I'm all right.

14          THE COURT:  As far as the masks are concerned, I

10:00    15     don't have a mask on.  I feel that I'm adequate social distance

16     from everybody.  As far as counsel are concerned and Mr. Pitts,

17     I'll leave it to your discretion.  If you're more comfortable

18     not wearing a mask when you talk or at any other time during

19     the hearing, that's fine.  If you wish to wear a mask, that's

10:01    20     fine as well.

21          This is scheduled as a sentencing hearing on two

22     separate counts; Count 1, charge of possession with intent to

23     distribute oxycodone; Count 2, possession of a firearm by a

24     prohibited person.

10:01    25          Before today I have carefully reviewed the

3

10:02

1   Presentence Investigation Report.  I've actually reviewed it

2   twice.  I've read the Sentencing Memorandum and Supplement

3   submitted on behalf of Mr. Pitts, and I've read every letter of

4   support submitted on behalf of defendant.  Read most of those

5   letters twice.  I read a letter this morning from Mr. Pitts'

6   girlfriend in Detroit, and there were several letters from his

7   parents, and all very nice supportive letters.

8          I've also reread Mr. Danny Pitts' most recent letter,

9   where he raised some concerns about earlier convictions

10:02

10  identified in the Presentence Report.  One was a charge when

11  Mr. Pitts was apparently 14.  There was another robbery type

12  attempt case that went to trial.

13         And then there was a incident referred to in

14  Mr. Pitts' letter about some shoplifting charge in which

10:03

15  Mr. Pitts' father, Danny Pitts, was identified in the

16  Presentence Report as actually being present at the time, and

17  Mr. Pitts was -- Mr. Danny Pitts was very concerned about that

18  because he said he's never had any criminal offenses.

19  Specifically, that would be paragraph 32, a retail fraud

10:03

20  charge, disposition unknown.

21         All of Danny Pitts' concerns are identified -- or at

22  least made a part of the record.  None of those convictions

23  that Mr. Danny Pitts referred to in his most recent letter,

24  which is Docket Number 508, were matters that affected the

10:04

25  calculation of the sentencing guidelines.  They -- none of --

4

1    those incidents did not impact my decision in this case in any

2    manner, but I understand his concerns, and they are made a part

3    of the record here.

4              Mr. Volk, was there anything else that the government

10:04   5    had filed, sentencing memorandum, or --

6              MR. VOLK:  No, Your Honor, we did not file a

7    sentencing memorandum.

8              THE COURT:  And did you have any objections to the

9    facts contained in the Presentence Report or the guideline

10:04   10   calculations?

11             MR. VOLK:  I don't have any objections to the facts,

12   Your Honor.

13             With reference to the guideline calculations, I know

14   that those were addressed by Mr. Rosenquist in his Sentencing

10:04   15   Memorandum.  And as the Court knows from the Plea Agreement

16   here, we had stipulated to or agreed to a base offense level of

17   24, a two-level enhancement for the firearm, the three-level

18   role enhancement, and the acceptance reduction.  That would

19   have got us to an offense level of 26, with a criminal history

10:05   20   category of III.  The range would have been 78 to 97 months.

21             I think that's still a fair and accurate assessment

22   of what Mr. Pitts pled guilty to.  I understand how the

23   calculations were made in the Presentence Report and why the

24   probation office found them as they did.  We've agreed in the

10:05   25   Plea Agreement we're going to be recommending 120 months

1    regardless of where the guidelines fall.

2            THE COURT:  So I -- to honor that recommendation, I'd

3    either have to vary upward or vary downward, correct?

4            MR. VOLK:  Correct, depending on how the Court wishes

10:05    5    to address that.  And here's -- here's how I look at this, Your

6    Honor.  Mr. Pitts pled guilty to an event.  That event happened

7    on -- in January of 2018.  That was the traffic stop where he

8    was found to be in possession of the quantity of pills and the

9    firearm.  That's what he pled guilty to.  And based upon that,

10:06    10    we think that the offense level of 26 with the various

11    adjustments that I just noted would apply, and that would

12    result in a range of 78 to 97 months.

13            As is noted in the -- in Mr. Rosenquist's Sentencing

14    Memorandum, in the way we get to 120 months is the Court's

10:06    15    consideration of the other conduct that's --

16            THE COURT:  Right.

17            MR. VOLK:   -- discussed in the -- in the Presentence

18    Report, and I -- I think that's a more fair way to look at the

19    plea and the factual circumstances here, Your Honor.  So I

10:07    20    would actually ask the Court to adopt what Mr. Rosenquist has

21    noted in his Sentencing Memorandum as -- and what is contained

22    in that Plea Agreement and then vary upward to the 120 months

23    as opposed to adopting what's in the Presentence Report and

24    varying downward, Your Honor.

10:07    25            THE COURT:  But the net result is the same.

6

1          MR. VOLK:  Exactly.

2          THE COURT:  Right.  All right.  Mr. Rosenquist.

3          MR. ROSENQUIST:  Your Honor, I would parrot a lot of

4    what Mr. Volk has already told the Court.  These plea

10:07    5    agreements that we arrive at, and especially when Mr. Volk

6    agreed to charge out an Information and dismiss the Indictment,

7    they don't come overnight.  There's a -- there's a lot of

8    thinking that goes into these things, and we knew, as Mr. Volk

9    has already told the Court, that this was a matter that was

10:08   10    going to fall within 74 to 97 months.

11          However, given the -- not necessarily the severity of

12    the offense, but the number of times that Mr. Pitts came to the

13    state of North Dakota, it could be assumed that probably, if we

14    went to trial, other co-defendants might and probably would

10:08   15    testify to the fact that Mr. Pitts didn't come empty-handed

16    when he came to North Dakota.  But on the other hand --

17          THE COURT:  The total pills would have likely been

18    five times what it had been agreed upon in the Plea Agreement.

19          MR. ROSENQUIST:  Very well could have been, Your

10:09   20    Honor.  That being the case, an upward departure is certainly

21    warranted.

22          XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

23    XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

24    XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

10:09   25    XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

1   XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

2            And then looking at what the other co-defendants

3   ended up with as sentences in this matter, it only made sense

4   that Mr. Pitts wouldn't serve an appreciable amount of time

5   more than any of the rest of them, and that's where we came up

6   with this -- the idea of just having the Information and doing

7   an upward departure.

8            My client isn't entering any kind of a plea for

9   leniency at this time and asking for the Court to go less than

10  what the Plea Agreement called for, and that was 120 months,

11  but he's asking the Court to accept the 120 months and not do

12  an upward departure from there.

13           THE COURT:  All right.  No, I intend to honor the

14  Plea Agreement.  It's just a question of how we get there in

15  terms of the base offense level.

16           But did you, Mr. Rosenquist, have any objections to

17  the facts as outlined in the Presentence Investigation Report?

18           MR. ROSENQUIST:  Myself and Ms. Heck had a

19  conversation about it, Your Honor, yes.  There was one

20  paragraph where there was a listing of all the things that my

21  client had supposedly been convicted of, and it also included

22  just kind of rolling on, his two arrests -- or one arrest and

23  then another call that came in on a domestic assault --

24           THE COURT:  Right.

25           MR. ROSENQUIST:  -- but there was no -- no

8

1   conviction.  They were both dismissed, but the casual reader of

2   that paragraph would think that, okay, he was convicted here,

3   he was convicted here, he's convicted here.  It doesn't say he

4   wasn't convicted here.  It just said that there was an incident

10:11   5   of domestic assault.

6           And, you know, if it's not -- I can see where those

7   things get put in -- put in.  I can see where the person would

8   assume that there must be a conviction because there was an

9   arrest, but certainly there wasn't, and there's no paperwork

10:12   10   that says there were, and, of course, the Court will note that

11   there was a dismissal.

12           THE COURT:  Right.  There was -- paragraphs 33 and 34

13   mentioned two separate domestic violence incidents.  One was

14   dismissed.  The other was not prosecuted, and they didn't

10:12   15   affect the sentencing guideline calculations.

16           MR. ROSENQUIST:  But --

17           THE COURT:  But do you feel that -- do you have any

18   objections that you feel that I need to address that would in

19   some way affect the sentencing guidelines?

10:12   20           MR. ROSENQUIST:  No, Your Honor, there's nothing

21   that's going to affect the sentencing guidelines.

22           THE COURT:  All right.

23           MR. ROSENQUIST:  It's just a matter of the record,

24   and my -- my client and, of course, my client's father was

10:12   25   somewhat distressed by what he read because it didn't -- I

9

1    think he read it a little bit differently.  I don't think

2    that --

3              THE COURT:  Right.

4              MR. ROSENQUIST:  -- there's anything written about a

5    murder, attempted murder, so maybe a misunderstanding there,

6    but certainly not a misunderstanding where Mr. Pitts was

7    supposedly at a Walmart when -- when there was some shoplifting

8    done.  And I'm talking about Danny Pitts, Your Honor.

9              THE COURT:  Well, the one paragraph, 25, is -- that

10   was a conviction at age 18, an assault charge.  The description

11   of that incident is a bit confusing because it does say the

12   victim shot into his car and hit the passenger, went to the

13   hospital, but recovered.  His friends returned fire, which

14   killed the victim, but yet there doesn't --

15             MR. ROSENQUIST:  I guess it says that, Your Honor,

16   but nobody died there.

17             THE COURT:  Okay.  Well, Mr. Danny Pitts' letter is a

18   part of the record, and none of the objections or concerns are

19   matters that impact the sentencing guideline calculations in

20   any way, so I don't need to make any official ruling on or

21   finding on any of those matters.

22             But with respect to the overall base offense level in

23   this case and -- Heather, are you on the phone?

24             THE PROBATION OFFICER:  Yes, I am, Your Honor.

25             THE COURT:  Okay.  What my finding is going to be by

10:13

10:13

10:13

10:14

10:14

10

1   a preponderance of the evidence is that the appropriate base
2   offense level will be what the parties had agreed upon in the
3   Plea Agreement of a 26, so I would request that the Presentence
4   Report be amended to reflect that, and in paragraph 12, to
5   reflect the total quantities of pills and the conversion that
6   had been agreed upon in the Plea Agreement, so that would be
7   changed from a 30 to a 26.

8          Ms. Heck, I think that you properly calculated the
9   appropriate base offense level in this case.  I think the
10  Presentence Report, as originally drafted, was accurate.  I
11  think the pill quantities are probably conservative estimates.

12         But I'll respect what the parties had agreed upon and
13  had contemplated in terms of a base offense level in the Plea
14  Agreement and will make my finding based on a preponderance of
15  the evidence that the appropriate base offense level is 26.
16  All of the other sentencing guideline calculations on page 7
17  and 8 of the Presentence Investigation Report would remain the
18  same.

19         But what we're left with at the end of the day is an
20  offense level of 26, a criminal history category of III.
21  That's what the parties had agreed upon in their Plea
22  Agreement, and I'll honor that for purposes of the sentencing
23  guideline calculations in this case.

24         MR. VOLK:  Your Honor, if I may, I think the base
25  offense level is actually a 24, and the total adjusted offense

10:14
10:15
10:15
10:16
10:16

11

1    level with the firearm and the role enhancement --

2              THE COURT:  Yeah, you're right.

3              MR. VOLK:  -- it ends up being 26.

4              THE COURT:  So, Heather, yeah, that's right.  It

10:16    5    should be a base offense level of 24, and make sure that the

6    total number of pills and the conversion of those drug weights

7    are properly recalculated in the Presentence Investigation

8    Report.

9              MR. ROSENQUIST:  Your Honor, if I may, I don't mean

10:16   10   to beat the dead horse here, but paragraph 15, Ms. Heck had put

11   down a plus-two, I believe, and it should be probably -- a

12   plus-three is what we calculated, and then --

13             THE COURT:  Well, paragraph 15 in the Presentence

14   Report that I have in front of me shows plus-three.

10:17   15             MR. ROSENQUIST:  Oh, okay.  That's -- you've got the

16   updated one.

17             THE COURT:  Yeah.

18             MR. ROSENQUIST:  My apologies.

19             THE COURT:  So are we all in agreement that

10:17   20   everything remains the same in the Amended Presentence

21   Investigation Report other than the base offense level moving

22   down to a 24?

23             MR. VOLK:  Yes, Your Honor.

24             THE COURT:  You're on the same page, Mr. Rosenquist?

10:17   25             MR. ROSENQUIST:  I am, Your Honor.

1          THE COURT:  All right.  Good.  And, Mr. Pitts, were

2     you given an opportunity to read the Presentence Investigation

3     Report?

4          THE DEFENDANT:  Yes.

10:17   5          THE COURT:  Have you had a chance to discuss that

6     with your attorney?

7          THE DEFENDANT:  Yeah.

8          THE COURT:  Okay.  Are there any witness that either

9     party intended to call here today?

10:17  10          MR. VOLK:  No, Your Honor.

11          MR. ROSENQUIST:  No, Your Honor.

12          THE COURT:  All right.  So, Mr. Pitts, I'll give both

13     attorneys an opportunity to outline what they're recommending,

14     and it was a joint recommendation in the Plea Agreement.  When

10:18  15     the attorneys are done, I'll turn to you and give you a chance

16     to speak.  If there's anything you want to say, you've got the

17     same right to speak as the attorneys have had in this case.

18     Mr. Volk.

19          MR. VOLK:  Your Honor, pursuant to the Plea Agreement

10:18  20     we are recommending the 120-month term of imprisonment, with

21     credit for the time that Mr. Pitts has served to date,

22     three-year term of supervision, the $200 in special

23     assessments, and we would move to dismiss the Indictment or the

24     Superseding Indictment - I think in this case it's actually the

10:18  25     Superseding Indictment - pursuant to that Plea Agreement as

13

1   well.

2           Your Honor, we do think the 120-month sentence is a

3   reasonable and fair sentence to impose upon Mr. Pitts

4   considering all of the sentencing factors in 3553(a).  This was

10:18   5   serious conduct.  It involves -- the offense conduct involves a

6   very highly addictive substance, oxycodone, that that has

7   effectively plagued the Fort Berthold area.

8           And I think Mr. Pitts is significantly responsible

9   for some of that addiction taking place up there because of the

10:19   10  quantity of pills that he was moving into that area.  It's

11  ruined and tarnished the lives of multiple people, not only,

12  you know, those who were charged in this case, but others who

13  were acquiring as well.  It's a substantial volume of pills.

14          And when you look at the Presentence Report here,

10:19   15  it's clear that this was a financial motivation for Mr. Pitts.

16  He's not a drug user, so he is solely here to make money.

17          And, quite honestly, if it was just a matter of, you

18  know, making money as a drug dealer, he could do that in

19  Michigan, but he's here in North Dakota for a specific purpose,

10:20   20  and that purpose is to make more money because he knows that

21  these pills, oxycodone 30-milligram pills, can be sold for a

22  higher price here than they would have been able to be sold in

23  Michigan, so that's why he's here, and it's caused a lot of

24  distress, a lot of destruction up on the reservation.

10:20   25          You know, I've read the letters.  He's described --

14

1   and in the Presentence Report Mr. Pitts is described as a -- by

2   his friends and his family as a very caring individual, and

3   that may be to them, but he certainly was not that to the

4   enrolled members of the tribe up on Fort Berthold because he's

5   caused them an awful lot of pain and destruction.  Some of

6   those individuals certainly are complicit to some degree

7   because they're addicts, they're users.  They assisted

8   Mr. Pitts in the distribution.

9        But this is very serious conduct, and that's the

10  reason why, Your Honor, we think, you know, an upward variance

11  from that 78-to-97-month range is specifically applicable here,

12  and I think it's reasonable in light of the other sentences

13  that were imposed here.

14       The next highest sentence was 78 months, and that was

15  Justin Price, one of the co-defendants in this case.  And

16  Justin Price, Your Honor, was a -- was a two-time drug

17  distributor of opiate pills.  Frankly, his sentence -- he was

18  serving -- he served a sentence of imprisonment.  He continued

19  to use substances while he was in prison, and immediately upon

20  getting out he began using again and then hooked up with

21  Mr. Pitts and others and started distributing again, so his

22  sentence was 78 months.

23       The next highest was 60 months, which was

24  Mr. Washington, and so the sentence we're recommending is

25  double that of Mr. Washington's, and it's a little more than

15

1   40 months greater than what Mr. Price received, and so I think

2   that's fair and reasonable in light of Mr. Pitts being, you

3   know, kind of the top of the rung here.

4            THE COURT:  Where's Mr. Lunsford at in the process?

10:22   5            MR. VOLK:  He has -- he has entered a guilty plea,

6   Your Honor.  We're awaiting sentencing in his case.

7            THE COURT:  He is in custody?

8            MR. VOLK:  He is out of custody, I believe, at the

9   present time.  I believe he's at a residential re-entry center

10:22  10  at the moment, Your Honor.

11           And so that's kind of where -- why we believe that a

12  120-month sentence in total for Mr. Pitts was -- is reasonable

13  and appropriate, Your Honor, and under the circumstances we

14  would ask the Court to adopt that.

10:23  15           THE COURT:  So is Mr. Lunsford the last of this group

16  of defendants to be sentenced?

17           MR. VOLK:  Yes, Your Honor.

18           THE COURT:  Okay.  Mr. Rosenquist.

19           MR. ROSENQUIST:  As I said before, Your Honor, we

10:23  20  didn't arrive at this Plea Agreement overnight.  It took some

21  hammering out, and I appreciate the cooperation in arriving at

22  this Plea Agreement.  Mr. Volk of the U.S. Attorney's Office

23  probably precluded having to have a trial in the matter.

24           Having said that, we agreed in this Plea Agreement to

10:23  25  make no recommendation under 120 months, and I'm not going to

16

1   do so now, but 120 months is an appropriate sentence, I

2   believe.   XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

3   XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

4   XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

5   XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

6   XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

7   XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

8          But on the other hand, when we look at the sentences

9   of the other co-defendants -- as the Court may recall, my

10  client has been incarcerated now for just about three years.

11  His first attorney passed away and nobody knew it.

12          THE COURT:  Oh, I remember that incident, yeah.

13          MR. ROSENQUIST:  And then another attorney was

14  appointed to represent him, and she withdrew.  And then I was

15  appointed to represent him, so he's been incarcerated now for

16  three years, and that may have served as a little bit of an

17  advantage to him because we were able to see what some of the

18  co-defendants ended up getting sentenced to.

19          But he's young.  He doesn't use drugs.  If he gets to

20  the point now that he has learned that you can't make an easy

21  buck, you have to really work for it, then society is a better

22  place for it.  So I'd ask that the Court follow the Plea

23  Agreement and sentence my client as is -- as it was worked out

24  to 120 months.

25          THE COURT:  Thank you.  Mr. Pitts, I need to give you

17

the same opportunity to speak as others have had here.  Is
there anything that you would like to say today?  Or if you
have any questions, you're free to raise those as a part of
this hearing.

          THE DEFENDANT:  Just that I take full responsibility
for my actions and consequences that come with it.

          THE COURT:  Where have you been held in custody here
in the last year?

          THE DEFENDANT:  Washburn and Ward County.

          THE COURT:  Have you been treated respectfully?

          THE DEFENDANT:  Yes.

          THE COURT:  Where did you come from today?

          THE DEFENDANT:  Ward.

          THE COURT:  Pardon?

          THE DEFENDANT:  Ward County.

          THE COURT:  Okay.  But your plan is to go back to
Detroit when you're done with this case and the sentence?

          THE DEFENDANT:  Yeah.

          THE COURT:  Okay.  And as I understand it, your
father is retired now, is that correct?

          THE DEFENDANT:  Yes.

          THE COURT:  Okay.  And your mother, does she still
work full-time?

          THE DEFENDANT:  Yeah, she's a nurse.

          THE COURT:  Okay.  Have any brothers and sisters back

18

1    home that live with your parents, or --

2            THE DEFENDANT:  I got brothers and sisters.  I have

3    brothers and sisters back home.

4            THE COURT:  Are they younger than you or older than

5    you?

6            THE DEFENDANT:  Older.

7            THE COURT:  Okay.  And when you were making trips out

8    to North Dakota, was that usually by car?

9            THE DEFENDANT:  Yeah.

10           THE COURT:  Usually traveling by yourself?

11           THE DEFENDANT:  Yeah.

12           THE COURT:  Okay.  And was it 2016 that you first got

13   started?

14           THE DEFENDANT:  Yeah.

15           THE COURT:  How was it that you got started?  Was it

16   somebody back home that told you about how much money they were

17   making and --

18           THE DEFENDANT:  Yes.

19           THE COURT:  Okay.  But you've never been a pill user,

20   or --

21           THE DEFENDANT:  No.

22           THE COURT:  Okay.  And when you'd come to North

23   Dakota, were you generally staying in the New Town area?

24           THE DEFENDANT:  Yeah.

25           THE COURT:  Okay.  With others that were selling?

19

1          THE DEFENDANT:  Yeah.

2          THE COURT:  Anything else anyone wishes to say here

3    today?

4          MR. VOLK:  No, Your Honor.

5          MR. ROSENQUIST:  Just placement recommendations, Your

6    Honor.  My client, if at all possible, would like a

7    recommendation to the BOP that he be housed in a federal

8    penitentiary in the Ohio area.  I don't know what -- what you

9    have in the Ohio area or what the BOP does, but he would like

10   -- appreciate a recommendation to Ohio.

11         THE COURT:  Not Detroit.

12         MR. ROSENQUIST:  If there's a federal penitentiary in

13   Detroit, maybe, but I think he wants to stay away from Detroit

14   during his incarceration.

15         THE COURT:  All right.  And that's satisfactory to

16   you, Mr. Pitts?

17         THE DEFENDANT:  Yeah.

18         THE COURT:  I read somewhere, and I don't know if it

19   was in the Presentence Investigation Report or -- that you've

20   had a few fights in jail here in North Dakota?

21         THE DEFENDANT:  Yes.

22         THE COURT:  What -- what were those about?

23         THE DEFENDANT:  A basketball misunderstanding.

24         THE COURT:  Okay.  Somebody thought they'd been

25   fouled and --

1           THE DEFENDANT:  Yes, stuff -- yeah.

2           THE COURT:  Okay.  Did you play basketball in high

3    school?

4           THE DEFENDANT:  Yeah.

10:30    5           THE COURT:  What school was that?

6           THE DEFENDANT:  Fraser.

7           THE COURT:  Pardon?

8           THE DEFENDANT:  Fraser High School.

9           THE COURT:  Okay.  What kind of team did you have?

10:30   10           THE DEFENDANT:  It was all right.

11           THE COURT:  Well, I've reviewed the -- well, first of

12    all, Heather, did you have any questions about my findings in

13    the Presentence Investigation Report?

14           THE PROBATION OFFICER:  No, I did not, Your Honor.

10:30   15           THE COURT:  And you can -- what do you do, just make

16    -- issue an Amended Presentence Investigation Report?

17           THE PROBATION OFFICER:  Yes, one will be filed by the

18    end of the day today.

19           THE COURT:  Okay.  And again, I'm not in any way

10:30   20    critical of the calculations that you made.  I think that they

21    were accurate.

22           But I've reviewed the Presentence Investigation

23    Report.  I accept all of the facts contained in the report.  In

24    terms of the sentencing guideline calculations, they've been

10:31   25    revised now to reflect an overall offense level of 26 and a

21

1   criminal history category of III.

2          There have been no other requests for any traditional

3   departures from the guidelines, so I need not address that.

4   With respect to the sentencing factors under 18 USC Section

10:31   5   3553(a), I'm well aware of all of those factors.  I have given

6   all of them consideration in this case.

7          Based on the joint recommendation of the parties and

8   the facts of this particular case, and in the broad exercise of

9   my discretion, I will vary upward to the joint recommendation

10:31   10   of the parties of 120 months.

11          And the Eighth Circuit has made it repeatedly clear

12   to sentencing judges in this circuit that when we are

13   addressing and assessing the 3553(a) factors, we are entitled

14   to rely upon all of the factual information contained in the

10:32   15   Presentence Investigation Report, which I have relied upon.  We

16   are entitled to rely upon factual information contained in the

17   Sentencing Memorandums and letters of support, arguments of

18   counsel, joint recommendations of the parties and plea

19   agreements, and I've relied upon all of that information.

10:32   20          So it'll be my judgment, Mr. Pitts, that you shall be

21   committed to the custody of the Bureau of Prisons to be

22   imprisoned for a period of 120 months - that was the joint

23   recommendation of all parties - and thereafter placed on

24   supervised release for a period of three years.  So the record

10:32   25   is clear, there were two counts.  I'm imposing 120 months on

22

each count, to run concurrent with one another.  The second
count, I assume, carries the ten-year --

                MR. VOLK:  Yes.

                THE COURT:  -- statutory max for guns?

                MR. VOLK:  That's correct, Your Honor.

                THE COURT:  Okay.  And the period of supervision that
I'm ordering is three years, and that's three years on each of
Counts 1 and 2, to run concurrent with one another, so a total
of three years of supervision.  I believe that's a sentence
that is sufficient but not greater than necessary.  I'll
dismiss the Superseding Indictment with prejudice.

                Mr. Pitts, as a part of your sentence I'm ordering
that you pay a special assessment of $200.  That's a mandatory
fee payable to the District of North Dakota.  I don't have the
discretion to waive that.  I am not ordering that you pay any
fine in this case.

                In terms of the conditions of supervised release that
you're required to comply with, those will all be spelled out
in the judgment that I sign, and the judgment is the final
paperwork in this case.  I'll sign that today.  When you're
released from custody, wherever you're living and working and
carrying on with your life, you'll be assigned a federal
probation officer that'll be supervising you.  That person will
sit down with you shortly after your release from custody and
again review all of these conditions with you.

                                  23

1          If you intend to live in Detroit, Michigan, area, the

2     District of Michigan will have to accept your supervision,

3     which shouldn't be a problem.  And generally that paperwork is

4     all taken care of in the months before you're released from BOP

10:34   5     custody.

6          And you will also get a copy of this judgment that

7     I'll sign, so you'll be able to see what all of these

8     conditions are, but I'll summarize them for you.  Every

9     defendant that's sentenced in the federal criminal justice

10:34   10    system nationwide who's on supervision has to comply with what

11    are known as standard conditions of supervised release.

12    They're uniformly ordered for everybody.  The standard

13    conditions require that you live a law-abiding lifestyle.  If

14    you break any laws while you're on federal supervision, that's

10:35   15    a problem.

16          The standard conditions also prohibit you from using

17    street drugs.  You are prohibited from even associating with

18    people that use street drugs, and that includes prescription

19    drugs for which individuals don't have a prescription.

10:35   20          The standard conditions prohibit you from even

21    associating with individuals that have felony convictions on

22    their record unless your probation officer has approved that

23    association.

24          Another consequence of having a federal felony

10:35   25    conviction is that you are now prohibited for the rest of your

24

1   life from ever possessing firearms or ammunition.  That's a

2   penalty that's imposed by Congress.  Congress has identified

3   certain individuals that are considered to be prohibited

4   persons, and convicted felons are one of those categories, so

5   you can't own a gun.  You can't be handling guns, and you can't

6   be around guns.

7          The one thing that you need to know -- and I'm not

8   telling you this to lecture you or talk down to you.  I'm

9   telling you because I hope that you'll never get in trouble

10  again, but some people are of the belief that as long as they

11  don't have a gun in their hands, that they're free and clear of

12  ever being charged with a crime.  That's not true.

13         The term "possession of a firearm" is a rather

14  broadly defined term, and it's something that's usually left up

15  to a jury to decide.  But if you're in close proximity to a

16  gun, if you're near a gun and you have access to that gun,

17  you're still probably considered to be in possession of it.

18         So what that means is that -- and I'll give you some

19  examples.  You can't be traveling in a car with somebody else

20  that might have a gun.  You need to know who you're getting

21  into a car with.  You can't be living in a residence where

22  somebody else might own a gun even if they have it in their

23  bedroom and locked in a safe.

24         You can't be visiting residences where there might be

25  guns around.  You can be over at somebody's house watching a

25

basketball game, and if there's a firearm around and word gets
back to law enforcement that you were over at this apartment or
house for three, four hours and there was a semiautomatic
handgun sitting on the kitchen counter and the government can
show that you were there and were aware of that firearm, you're
going to get charged with a firearm offense, one of the most
popular crimes charged in federal courts all over the country,
felon in possession of a firearm or ammunition.

So you need to be careful about who you associate
with and making sure that you don't put yourself in a position
where there might be -- you might be where a gun is located.
My advice is don't go there.  If you think there might be a gun
around someplace that you're planning on going to, don't go
there.  And if you end up someplace in the future where there
is a gun, get yourself out of there as fast as you can.

They're popular crimes charged out in every federal
district court in this country.  And the conviction rate
nationwide for the federal government in gun charges is
99.6 percent, something like that, which means that the
government usually wins gun cases when they go to trial.

And I've tried a lot of gun cases, and I've seen one
defendant that was found not guilty in a gun case.  And the
reason is most juries just aren't very sympathetic towards
convicted felons that have put themselves around a gun.  Right
or wrong, just or unjust, juries are just not very sympathetic

26

1   to defendants in those kinds of cases, so that's my advice, for

2   what it's worth.

3           And with your criminal history - and you've got a

4   couple of other gun type offenses or convictions in your past -

5   you're looking at close to ten years if you're charged and

6   convicted of another gun offense.  It doesn't matter what state

7   you're in or what judge you're in front of.  I don't want that

8   for you.  I -- and I think that you're a smart guy and you know

9   what you need to do to avoid that kind of problem again in the

10  future, but any questions about gun issues?

11          THE DEFENDANT:  No.

12          THE COURT:  Okay.  And then among the other standard

13  conditions is that you'll be assigned a probation officer.  You

14  got to check in with that officer as frequently as they require

15  it of you.  Usually when you start out, they're asking you to

16  check in once a week or once every other week or it might only

17  be once a month.  But if you don't check in, that's usually a

18  sign that there's some problems, and then they start writing

19  you up, and we end up back in court.

20          I have put you on supervision for three years.  It

21  doesn't necessarily have to be three years.  If you're doing

22  well and you are getting along well with your probation

23  officer, that period of supervision can be shortened.  It

24  oftentimes is for people.  Under federal law, being convicted

25  of these offenses, you are required to be on supervision for at

27

least a year, but it doesn't have to be significantly longer than that.

If you're doing well, generally what happens is that the probation officer will come to me and say, "Judge, Mr. Pitts is doing fine. I don't think we need to keep him on supervision for a total of three years. I'd ask that you end the supervision early." And 100 percent of the time in the last 19 years that I've been asked to end somebody's supervision early, I have signed the paperwork and ended it early. I've never refused to do that for any defendant. So it really depends on how you're doing and how you're getting along with the United States Probation Office in whatever city that you're living in.

Any questions about the standard conditions?

THE DEFENDANT: No.

THE COURT: Okay. Then I'm ordering some special conditions, and they also require that you comply with them. Any violation of any of these conditions usually means that you're at risk of going back to prison for up to two years.

Special conditions are as follows: I'm ordering that you abstain from using alcohol and street drugs, inhalants and synthetic drugs. Abstain means shall not use.

You will be subject to random drug and alcohol screening or testing, as is everybody else in this country convicted of a drug offense in the federal system.

28

1       I'm ordering that you participate in any form of
2   counseling or treatment or programming or classes recommended
3   by your supervising probation officer.  By ordering that, I'm
4   not suggesting that you need to go to a long list of classes
5   and treatment.  I'm not even remotely suggesting that.  I'm
6   just ordering it, and that gives your probation officer
7   discretion, and if he or she feels that maybe you could benefit
8   from some class in your local community, you can be required to
9   take part in that while you're on supervision.

10      It's not designed to punish you.  It's designed to
11  assist you if your probation officer feels you may need some
12  assistance, whether it's -- maybe it's just a class on
13  financial counseling or relationship counseling or cognitive
14  skills.

15      Another special condition that I'm ordering is that
16  you can be placed in a halfway house at any time while you're
17  on supervised release.

18      And, finally, I'm ordering a search clause, and
19  search clauses are in place for virtually every defendant
20  sentenced in a federal criminal case.  Search clauses simply
21  mean you can be searched by the United States Probation Office
22  any time, any place.

23      They do not need search warrants or Court orders to
24  conduct searches of you, the residence that you're living in,
25  motor vehicles you're traveling in, computers, computer

29

1  devices, cell phones, smart phones.  They can search all of
2  those things while you're on federal paper.

3        The United States Supreme Court has said they can do
4  that, so there really isn't any question anymore about the
5  validity of search clauses.  You may never be searched, but
6  they always have a right to do it while you're on supervision.
7  Do you feel that you understand that?

8        THE DEFENDANT:  Yes.

9        THE COURT:  Okay.  I will recommend to the Bureau of
10 Prisons that they place you in a low-security facility in the
11 state of Ohio.

12        And the Bureau of Prisons will be the entity that
13 calculates the precise number of days that you've already been
14 in custody.  They'll give you credit for that.  I don't do that
15 as a part of my sentence.  That's entirely a BOP function.

16        And under the current rules and regulations of the
17 BOP, if you're on good behavior, you're allowed to be released
18 after you've served 85 percent of your sentence.  Eighty-five
19 percent of 120-month sentence is 8.5 years, less the time that
20 you've already served, so there's benefits to being on good
21 behavior and staying out of fights and playing by the rules.

22        And in addition to good-time credit, if you're on
23 good behavior, generally inmates are allowed to serve up to the
24 last year of their sentence in a halfway house with work
25 release privileges.

30

1          Back in December of 2018, Congress passed and the

2    president signed a new law that's -- it's now not so new.  It's

3    two years old, but it was called the First Step Act, and under

4    the First Step Act, when you go into federal prison, they're to

10:46    5    do an assessment of you and what your needs are, what kind of

6    education or vocational training or treatment or things of that

7    sort that you may need.

8          And once they identify those needs, if you

9    participate in whatever program they feel is needed for you,

10:46   10   you're entitled to earn additional credit towards early release

11   by completing those programs, and you're eligible for all of

12   the new benefits of the First Step Act.

13         In terms of how soon you'll be leaving North Dakota,

14   that's the great unknown with this Covid-19 pandemic.  The

10:47   15   Bureau of Prisons is not moving people around the country very

16   quickly anymore.  Before Covid-19, usually after I'd sentence

17   somebody in North Dakota, they'd be moving out to a federal

18   prison within two, three weeks.  Now it's -- it might be two,

19   three months.

10:47   20         You'll get credit for the time that you're in

21   custody, but BOP is dealing with the pandemic in their

22   institutions.  And every time they move people around, they've

23   got to be quarantined when they come into a new jail type

24   facility, and so it's creating problems everywhere, and so I

10:48   25   don't know how quickly that you'll move out.

31

1            As soon as I sign the judgment today, it gets

2      electronically filed, and the BOP gets a copy of the judgment,

3      and they get a copy of the new Presentence Investigation

4      Report.  And the BOP has a staff down in Grand Prairie, Texas,

10:48  5   that decides where you're going to serve the time.  They may

6      make that decision in a few weeks, but that doesn't mean that

7      you'll be moved out of North Dakota in a few weeks.  It's

8      entirely up to the U.S. Marshal Service and the BOP, I guess,

9      how quickly that you go to any particular facility.

10:48  10          But there is certainly a benefit of staying out of

11     trouble in jail and getting that good-time credit.  And BOP, in

12     their effort to move more people out of prisons, is really

13     giving people more of a chance and a longer chance to serve a

14     portion of their sentence in a halfway house than what they

10:49  15  ever used to do before the pandemic.  Any questions?

16             THE DEFENDANT:  No.

17             THE COURT:  Finally, I need to inform you that you do

18     have a right to appeal.  After any defendant is sentenced, they

19     can appeal their case to a higher appeals court.  In North

10:49  20  Dakota it'd go to the Eighth Circuit Court of Appeals in St.

21     Louis.  Defendants can appeal their sentence, and they can

22     appeal any of the conditions of supervision that have been

23     ordered.

24             However, as a defendant, you only have 14 days to

10:49  25  appeal, 14 days, two weeks, and that starts today.  As soon as

32

1   I sign the final judgment, which is the final paperwork, then

2   the clock is ticking for your 14 days to appeal.  It'll start

3   today.

4         If you wish to appeal anything that I've done here

10:50   5   today, all that you need to do is talk to Mr. Rosenquist, and

6   he can take care of quickly filing a notice of appeal for you.

7   That's what the document is called that protects your appeal

8   rights.  It's just a one-page, one-paragraph document, but that

9   has to be filed within 14 days from today or you've lost your

10:50   10   right to appeal.  Do you understand that?

11         THE DEFENDANT:  Yeah.

12         THE COURT:  In the Plea Agreement that you signed -

13   we reviewed it in some detail - there was a paragraph - I

14   believe it was paragraph 24 - in which you agreed that you

10:50   15   would not appeal any sentence up to the joint recommendation of

16   120 months.  You had a right to appeal any sentence higher than

17   that, but you said that you would not appeal any sentence up to

18   120 months.  The appeals courts hold defendants to those

19   agreements.

10:51   20         I believe you've clearly given up your right of

21   appeal in the Plea Agreement.  Most defendants do give up their

22   right to appeal in the plea agreements that they sign as long

23   as -- and as long as they're sentenced in accordance with those

24   plea agreements, they generally don't have a snowball's chance

10:51   25   when they file appeals of their sentence.  Do you recall us

33

1   visiting about that?

2           THE DEFENDANT:  Yeah.

3           THE COURT:  Okay.  I appreciate all the letters that

4   were sent on your behalf.  They all spoke very well of you.

10:51   5   And I hope that you've learned a lesson and aren't going to get

6   caught up in the criminal justice system anywhere in this

7   country in the future, whether it's the federal system or the

8   state system or whatever it is.

9           If you get caught up in another drug, oxycodone type

10:52   10  offense in the federal system, you're going to get hammered in

11  federal court in terms of a sentence the next time around.

12  It's going to be at least 180 months, 15 years.  It doesn't

13  matter what state that you're in or what judge you're in front

14  of, it's a mandatory minimum of 15 years now.

10:52   15          XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

16  XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

17  XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

18  XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

19  XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

10:52   20          XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

21  XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

22  XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

23  XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

24  XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

10:53   25  XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

34

1    XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

2            XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

3    XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

4    XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

10:53    5    XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

6    XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

7    XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

8    XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

9    XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

10:54    10            XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

11    XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

12    XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

13    XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

14    XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

10:54    15    XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

16    XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

17            XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

18    XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

19    XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

10:54    20    XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

21    XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

22    XXXXXXXXXXX

23            XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

24    XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

10:55    25    XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

35

```
 1   XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
 2   XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
 3   XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
 4        XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
 5   XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
 6   XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
 7   XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
 8        XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
 9   XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
10   XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
11   XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
12   XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
13   XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
14   XXXXXXXXXXXXXXXXXXXX
15        XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
16   XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
17   XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
18   XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
19   XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
20   XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
21        XXXXXXXXXXXXXXXXXXX
22        THE COURT:  All right.  Mr. Volk, any objections to
23   what's been ordered here today or anything else that I've said
24   or done?
25        MR. VOLK:  No, Your Honor.
```

36

1          THE COURT:  Mr. Rosenquist?

2          MR. ROSENQUIST:  None, Your Honor.  Thank you.

3          THE COURT:  I want to thank you, Mr. Rosenquist, for

4    your involvement in this case and helping out western North

10:57   5    Dakota in these drug conspiracy cases and negotiating what I

6    believe is a fair and reasonable outcome for Mr. Pitts under

7    all of the circumstances.

8          Mr. Pitts, do you have any questions or concerns that

9    you'd like to raise before we close the record in this case?

10:57   10         THE DEFENDANT:  No.

11         THE COURT:  I only wish you the best, sir.  I hope

12   that you never get caught up in the criminal justice system

13   again.  I hope you can serve the time and move on with your

14   life and have a good life from here on out.  You're still a

10:57   15   young guy, and you've got a lot of life to live.  And I think

16   you're a smart gentleman who can do well for himself and his

17   family.

18         I'll remand you to the custody of the U.S. marshals.

19         We'll stand adjourned.

10:58   20         (Proceedings concluded at 10:58 a.m., the same day.)

21                    - - - - - - - - - -

22

23

24

25

37

<u>CERTIFICATE OF COURT REPORTER</u>

1                                            

        I, Sandra E. Ehrmantraut, a Certified Realtime

Reporter,

        DO HEREBY CERTIFY that I recorded in shorthand the

foregoing proceedings had and made of record at the time and

place hereinbefore indicated.

        I DO HEREBY FURTHER CERTIFY that the foregoing

typewritten pages contain an accurate transcript of my

shorthand notes then and there taken.

        Dated:   February 11, 2021

                                  /s/ Sandra E. Ehrmantraut
                                  Certified Realtime Reporter